**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**TAYLOE MCDONALD,**

    **Plaintiff,**

                                 **Case No.:**

**vs.**

**DBWPC, INC. d/b/a DELORES BARR**
**WEAVER POLICY CENTER,**

    **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, TAYLOE MCDONALD, by and through her undersigned counsel, sues Defendant, DBWPC, INC. d/b/a DELORES BARR WEAVER POLICY CENTER, and alleges as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 1367.

2. Venue lies within United States District Court for the Middle District of Florida, Jacksonville Division, because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

**PARTIES**

3. At all times material herein, Plaintiff, TAYLOE MCDONALD, (hereinafter referred to as "Plaintiff"), was a resident of Duval County, Florida.

4.      At all times material herein, Defendant, DBWPC, INC. d/b/a DELORES BARR WEAVER POLICY CENTER, (hereinafter referred to as "Defendant"), was a Florida Not for Profit Corporation, authorized and doing business in Duval County, Florida.

5.      Defendant is an employer as defined by the laws under which this action is brought and employs the required number of employees.

## GENERAL ALLEGATIONS

6.      At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

7.      At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

8.      Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

9.      Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

10.      Plaintiff, TAYLOE MCDONALD, timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") on November 30, 2018.

11.      On September 30, 2019, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination. A copy of the Charge of Discrimination and Dismissal is attached as **Exhibit A**. This Complaint has been filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

12. Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

## FACTUAL ALLEGATIONS

13. On or about November 12, 2013, Plaintiff began her employment with Defendant as Director of Strategic Planning and Public Affairs.

14. Throughout her employment with Defendant, Plaintiff was consistently rated as an exceptional performer.

15. In or around August 2017, Plaintiff was promoted to Vice President of Strategic Partnerships and received a retroactive salary increase.

16. On or about March 23, 2018, Plaintiff suffered a torn Anterior Cruciate Ligament (ACL). Thereafter, Plaintiff began approved medical leave under the Family and Medical Leave Act (FMLA) for surgery on her ACL, which took place on April 6, 2018.

17. On or about April 23, 2018, while Plaintiff was on approved FMLA leave, Inderjit "Vicky" Basra (Senior Vice President) went to Plaintiff's home to inform Plaintiff that her job duties changed; in particular, she was stripped of her management responsibilities and two-thirds of her duties were given to another employee, Blythe Zayets.

18. On or about May 1, 2018, Plaintiff began working from home and on or about May 16, 2018, Plaintiff returned from her approved medical leave. When Plaintiff returned to work, she was not restored to her same position or an equivalent position. Moreover, Zayets acted in a supervisory role over Plaintiff.

19. On or about July 21, 2018, Plaintiff learned that Basra was not properly licensed as a clinical social worker in the State of Florida. However, since approximately 2013, Basra represented herself as a Licensed Master of Social Work (LMSW). Basra held herself out as a LMSW in several contexts, including: Defendant's website, business cards, email signature block, and a variety of Defendant's business materials. According to witnesses, Basra's published calendar, and Basra's testimony in federal court, Basra illegally provided therapy and ongoing mental health counseling services to Defendant's clients using unrecognized credentials.

20. Between November 2016 and August 2019, Basra misrepresented her credentials in professional representation in: (1) sworn testimony in federal court, (2) her email signature, (3) her resume, (4) a guest column in The Florida Times Union, and (5) The Wellness Report. Moreover, Lawanda Ravoira (CEO) and DeeAnne Crookham (Vice President of Operations) had knowledge of, and approved, Basra's use of false credentials. For example, Ravoira approved Basra's falsified resume for use in a 2016 federal OJJDP grant.

21. On or about July 23, 2018, Plaintiff spoke to Basra about holding herself out as a licensed social worker in the State of Florida. Shortly thereafter, Basra and Ravoira called Plaintiff to a meeting and treated Plaintiff in a hostile manner for more than two (2) hours.

22. Following Plaintiff's objection to Basra's illegal behavior, Defendant began retaliating against Plaintiff.

23. On August 6, 2018, Plaintiff sent a letter to Crookham. In the letter, Plaintiff raised the concern that the reduction in job duties and responsibilities was related to her taking approved medical leave.

24. Additionally, Plaintiff stated that she was experiencing retaliation following her July 23, 2018 opposition regarding Defendant's compliance with Florida's licensing regulations. Plaintiff specified that Basra was illegally holding herself out as a LMSW, in violation of Chapter 491.012, *Florida Statutes.* Additionally, Plaintiff requested an independent investigation, whistleblower protection, and protection from retaliation.

25. On or about August 6, 2018, Crookham told Plaintiff that the independent investigator, Lisa Kemph, would call Plaintiff to schedule a time to discuss the issues; however, Kemph never called Plaintiff.

26. On August 10, 2018, Plaintiff sent an email to Crookham, asking for the retaliation by Basra, Ravoira, and Zayets to stop and cited specific examples from August 8, 2018.

27. On August 11, 2018, Plaintiff emailed Audrey Moran (Chair, Board of Directors) to reiterate the complaints that she sent to Crookham on August 10, 2018. Moran did not reply to Plaintiff's email.

28. On or about August 14, 2018, Plaintiff was instructed by Crookham to leave the board meeting moments before she was scheduled to present in order to meet with Kemph.

29. On or about August 16, 2018, Plaintiff was called to a meeting with Moran. At the meeting, Plaintiff was told that Kemph found an "issue" with Basra's license and it had "been addressed." Additionally, Moran told Plaintiff that no evidence of retaliation was found. Moran further told Plaintiff that Basra intended to terminate Plaintiff on July 23, 2018, due to "long-term, serious and on-going performance problems." Plaintiff asked Moran to specify

the performance problems, but Moran refused. No performance concerns were brought to Plaintiff's attention in any of her prior meetings with Basra or Ravoira.

30. Moran then presented Plaintiff with a separation agreement and severance offer. Moran told Plaintiff that she could either sign the agreement by Monday, August 20, 2018, or "go to work on Monday morning as usual" and meet with Basra to accept a Performance Improvement Plan.

31. On or about August 17, 2018, Plaintiff arrived at work and was told by Crookham to leave the office without explanation. Plaintiff attempted to work from home, but she was blocked from access to files on Defendant's shared drive. Plaintiff called Crookham more than once to attempt to gain access. Plaintiff also emailed Crookham and stated that she would like to return to the office so she could finish her work. Plaintiff also asked Crookham for a reason why she was sent home. Crookham did not respond to Plaintiff's email.

32. On August 20, 2018, Plaintiff returned to work and requested the Performance Improvement Plan from Ravoira and Basra. When Ravoira saw Plaintiff, she asked what Plaintiff was doing there. Plaintiff explained that she was there to review the Performance Improvement Plan. No Performance Improvement Plan was shared with Plaintiff. Instead, Plaintiff was sent home and told to meet with Moran at 11:00am. Moran was not available and agreed to meet with Plaintiff the following day.

33. On or about August 21, 2018, Plaintiff met with Moran. Moran told Plaintiff that she was insubordinate for working the prior Friday (August 17, 2018) and subsequent Monday (August 20, 2018). Moreover, Moran told Plaintiff that she could not return to the

office and no longer worked for the Defendant. Plaintiff was escorted to the elevator and out the door by two armed guards.

34. On August 30, 2018, Zayets, on behalf of Ravoira, emailed Defendant's Leadership Council and announced that Plaintiff "resigned" effective August 28, 2018.

35. On September 27, 2018, following Plaintiff's termination, Defendant held a staff meeting that included the vast majority of board members in order to "address any concerns" about Plaintiff's separation. Defendant's staff was instructed to say "I don't know" if asked about Plaintiff's separation and to direct inquiries to Crookham.

36. Despite Plaintiff's objection to the illegal behavior, Basra continued to use the false credentials on her email signature and various publications.

## COUNT I
## FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE

37. Plaintiff, TAYLOE MCDONALD, realleges and incorporates paragraphs one (1) through thirty-six (36) as though set forth fully herein.

38. Plaintiff is an individual entitled to protection under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq*.

39. Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant for twelve (12) months, had at least 1,250 hours of service for the Defendant during twelve (12) months immediately preceding her FMLA leave, and worked at a location where the Defendant had at least fifty (50) employees within seventy-five (75) miles.

40. Defendant is a covered employer under the FMLA in that it had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

41. Plaintiff suffered from a serious health condition within the meaning of the FMLA.

42. Defendant's actions interfered with Plaintiff's lawful exercise of her FMLA rights. Specifically, Defendant failed to restore Plaintiff to her position or an equivalent position.

43. Defendant's actions constitute a violation of the FMLA.

44. As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Liquidated damages;

    e. Attorneys' fees and costs;

    f. Injunctive relief; and

    g. For any other relief, this Court deems just and equitable.

## COUNT II
## FAMILY MEDICAL LEAVE ACT – RETALIATION

45. Plaintiff, TAYLOE MCDONALD, realleges and incorporates paragraphs one (1) through forty-four (44) as though set forth fully herein.

46. Defendant retaliated against Plaintiff in violation of the FMLA in that Plaintiff's utilization of qualified FMLA leave was a substantial or motivating factor which prompted Defendant to remove a significant amount of Plaintiff's job duties and responsibilities and

ultimately terminate Plaintiff's employment. Moreover, Plaintiff's complaints of FMLA retaliation/discrimination were a substantial or motivating factor which prompted Defendant to terminate Plaintiff's employment.

47. Defendant's actions constitute a violation of the FMLA.

48. As a result of Defendant's actions, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Liquidated damages;

    e. Attorneys' fees and costs;

    f. Injunctive relief; and

    g. For any other relief, this Court deems just and equitable.

## COUNT III
## AMERICANS WITH DISABILITIES ACT – DISCRIMINATION

49. Plaintiff, TAYLOE MCDONALD, realleges and incorporates paragraphs one (1) through thirty-six (36) as though set forth fully herein.

50. Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq*.

51. Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

52. Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended. Specifically, Plaintiff's medical condition (torn ACL) substantially limited one or more major life activities, including but not limited to: walking, driving, and working.

53. Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

54. By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant discriminated against Plaintiff by removing a significant amount of Plaintiff's job duties and ultimately terminating Plaintiff's employment with Defendant.

55. The above described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

56. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

57. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

58. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

      a.      Back pay and benefits;

      b.      Prejudgment interest on back pay and benefits;

      c.      Front pay and benefits;

      d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.      Punitive damages;

      f.      Attorneys' fees and costs;

      g.      Injunctive relief; and

      h.      For any other relief this Court deems just and equitable.

## COUNT IV
## AMERICANS WITH DISABILITIES ACT – RETALIATION

59.    Plaintiff, TAYLOE MCDONALD, realleges and incorporates paragraphs one (1) through thirty-six (36) as though set forth fully herein.

60.    Plaintiff suffered adverse employment actions for engaging in protected activity under the Americans with Disabilities Act, as amended. Specifically, Defendant retaliated against Plaintiff for requesting a reasonable accommodation for her disability. Stated differently, Defendant's adverse employment actions (removing a significant amount of Plaintiff's job duties and ultimately terminating Plaintiff) were causally connected to Plaintiff's request for a reasonable accommodation. Moreover, Plaintiff's termination was causally connected to her objections to retaliation and discrimination.

61.    The above described act of retaliation constitutes a violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112 *et seq*.

62. Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

63. Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

64. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e. Punitive damages;

    f. Attorneys' fees and costs;

    g. Injunctive relief; and

    h. For any other relief this Court deems just and equitable.

## COUNT V
## FLORIDA CIVIL RIGHTS ACT – DISABILITY DISCRIMINATION

65. Plaintiff, TAYLOE MCDONALD, realleges and incorporates paragraphs one (1) through thirty-six (36) as though set forth fully herein.

66. Plaintiff is an individual entitled to protection under the Florida Civil Rights Act ("FCRA"), Chapter 760, *Florida Statutes*.

67. Plaintiff is an employee within the meaning of the FCRA.

68. Plaintiff is an individual with a disability within the meaning of the FCRA. Specifically, Plaintiff's medical condition (torn ACL) substantially limited one or more major life activities, including but not limited to: walking, driving, and working.

69. Plaintiff was a qualified individual with a disability within the meaning of the FCRA because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

70. By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the FCRA. Specifically, Defendant discriminated against Plaintiff by removing a significant amount of Plaintiff's job duties and ultimately terminating Plaintiff's employment with Defendant.

71. The above described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

72. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

73. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

74. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff prays for judgment against Defendant and for the following damages:

      a.      Back pay and benefits;

      b.      Prejudgment interest on back pay and benefits;

      c.      Front pay and benefits;

      d.      Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

      e.      Punitive damages;

      f.      Attorneys' fees and costs; and

      g.      For any other relief this Court deems just and equitable.

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT - RETALIATION

75. Plaintiff, TAYLOE MCDONALD, realleges and incorporates paragraphs one (1) through thirty-six (36) as though set forth fully herein.

76. Plaintiff suffered adverse employment actions for engaging in protected activity under the Florida Civil Rights Act (FCRA). Specifically, Defendant retailed against Plaintiff for requesting a reasonable accommodation for her disability. Stated differently, Defendant's adverse employment actions (removing a significant amount of Plaintiff's job duties and ultimately terminating Plaintiff) were causally connected to Plaintiff's request for a reasonable accommodation. Moreover, Plaintiff's termination was causally connected to her objections to retaliation and discrimination.

77. The above described act of retaliation constitutes a violation of the FCRA.

78. Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

79. Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

80. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages;

e. Pecuniary and non-pecuniary losses;

f. Costs and attorneys' fees;

g. Punitive damages; and

h. For any other relief this Court deems just and equitable.

## COUNT VII
## FLORIDA'S PRIVATE WHISTLEBLOWER'S ACT

81. Plaintiff, TAYLOE MCDONALD, realleges and incorporates paragraphs one (1) through thirty-six (36) as though set forth fully herein.

82. This is an action for damages pursuant to Florida's Private Whistleblower's Act ("FWA"), §§ 448.101-105, *Florida Statutes*.

83. Plaintiff was an employee of Defendant under the FWA because Plaintiff performed services for and under the control and direction of Defendant for wages or other remuneration.

84. Defendant was Plaintiff's employer under the FWA because Defendant is a private individual, firm, partnership, institution, corporation, or association that employs ten (10) or more persons.

85. Defendant took a prohibited retaliatory personnel action against Plaintiff, in violation of §448.102(3), *Florida Statutes*, because Plaintiff objected to, or refused to participate in, an activity, policy, or practice of Defendant which is in violation of a law, rule, or regulation or that Plaintiff had an honest, good-faith belief was in violation of a law, rule, or regulation. Specifically, Plaintiff objected to and/or refused to participate in violations of Florida law, including, but not limited to: *Fla. Stat.* § 491.012, and Section 64B4-2.006, *Florida Administrative Code* and, as a result, was terminated from her employment.

86. As a result of the retaliatory action of Defendant, Plaintiff has suffered damages including, but not limited to: lost wages, benefits, and other remuneration, emotional pain and suffering and other compensatory damages and is requesting all available relief to which Plaintiff is entitled as set forth in the WHEREFORE clause below.

87. As a result of Defendant's unlawful acts, Plaintiff has and will continue to incur attorneys' fees, which are recoverable under Section 448.104, *Florida Statutes*.

WHEREFORE, Plaintiff demands judgment against Defendant and prays for the following relief:

    a. Injunction to restrain continued violations of the Act;

    b. Reinstatement to the same or an equivalent position;

    c. Reinstatement of fringe benefits and seniority rights;

    d. Lost wages;

    e.    Lost benefits;

    f.    Other remuneration;

    g.    Attorneys' fees and costs; and

    h.    Any other compensatory damages allowable at law.

## DEMAND FOR JURY TRIAL

89.    Plaintiff, TAYLOE MCDONALD, demands a trial by jury.

Dated this 27th day of November 2019.

**FLORIN GRAY BOUZAS OWENS, LLC**

*/s/ Gregory A. Owens*_____
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
wolfgang@fgbolaw.com
16524 Pointe Village Drive
Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*